NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1790
_____

UNITED STATES OF AMERICA

v.

KEBRUM TEKLU,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 2-09-cr-00060-005
(Honorable Berle M. Schiller)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 16 2012

Before: SCIRICA, FISHER, and JORDAN, *Circuit Judges*.

(Filed: February 7, 2013)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Kebrum Teklu appeals his judgment of conviction and sentence arising from a

conspiracy to commit Hobbs Act robbery (18 U.S.C. § 1951(a)). Teklu contends the

government breached its plea agreement by failing to fulfill a purported oral promise.

1

We will affirm.

I.

In October 2008, Teklu was indicted on seven counts arising from a string of armed robberies in the Philadelphia region: one count of conspiracy to commit Hobbs Act robbery (18 U.S.C. § 1951(a)) (Count 1); three counts of Hobbs Act robbery (18 U.S.C. § 1951(a)) (Counts 4, 14, and 16); and three counts of carrying a firearm during a violent crime (18 U.S.C. § 924(c)) (Counts 5, 15, and 17). Teklu was unemployed when the robberies were committed, but had previously worked at Delancey Street Bagels—one of the targeted businesses.

Pursuant to a written plea agreement, Teklu pled guilty to all of the charges against him except one gun charge—Count 17. In exchange for his guilty plea, the government agreed to move to dismiss the remaining gun charge at Teklu's sentencing if he cooperated in the prosecution of his coconspirators. An integration clause limited the terms of Teklu's plea to those in the written agreement. The integration clause also required that subsequent promises be embodied in a writing signed by both parties in order to be considered part of Teklu's plea agreement. At his change of plea hearing, Teklu confirmed the terms of the written plea agreement.

Teklu then testified against Devon Brinkley, one of his coconspirators. However, during the Brinkley trial, the government misstated the terms of Teklu's plea agreement. Instead of explaining that it had promised to drop one gun charge (Count 17) in exchange for Teklu's testimony, the government incorrectly stated that it had promised to drop *two* gun charges in exchange for Teklu's testimony:

2

Q: And pursuant to th[e written plea] agreement is it true that at the time of sentencing the Government may decide to drop two of the gun charges that are currently pending against you?
A: Yes.

By agreeing with the government's misstatement, Teklu's testimony at the Brinkley trial contradicts his earlier acknowledgment that the government would drop only one gun charge in exchange for his cooperation.

Despite his testimony against Brinkley, the government did not move to dismiss Count 17—let alone two gun charges—at Teklu's sentencing. Teklu failed to object to this apparent breach of the plea agreement. The district court imposed a sentence of 180 months' imprisonment on Counts 1, 4, 5, 14, 15, and 16, but significantly did not impose a sentence on Count 17.

## II.

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. Given Teklu's failure to object at sentencing, we review for plain error. *United States v. Dahmen*, 675 F.3d 244, 248 (3d Cir. 2012) (citing *Puckett v. United States*, 556 U.S. 129, 135 (2009)), *abrogating United States v. Rivera*, 357 F.3d 290 (3d Cir. 2004).

In order to prevail on plain error review, a defendant must show: (1) there was an error or defect below (i.e., "some sort of '[d]eviation from a legal rule'") that was not "intentionally relinquished or abandoned"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; and (3) the error "'affected the outcome of the district court proceedings.'" *Puckett*, 556 U.S. at 135 (alteration in original) (quoting *United*

*States v. Olano*, 507 U.S. 725, 732-34 (1993)).  If these three requirements are met, we have discretion to remedy the error if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  *Id.* (alteration in original) (quoting *Olano*, 507 U.S. at 736).

With respect to the first step of the plain error analysis, we must determine whether the government breached the plea agreement.  Here, we look to contract-law standards to determine whether the government's conduct was inconsistent with the defendant's reasonable understanding of the agreement when he pled guilty.  *United States v. Badaracco*, 954 F.2d 928, 939 (3d Cir. 1992) (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

III.

On appeal, Teklu contends the government breached the plea agreement by failing to drop *two* gun charges.[1]  This contention rests on two assumptions.  First, it assumes the plea agreement is not limited to the terms of the written plea agreement, but includes the government's misstatement at the Brinkley trial.  Second, it assumes this misstatement constitutes a binding oral promise by the government to drop two gun charges in exchange for Teklu's testimony against Brinkley.

The government argues that Teklu's plea agreement is limited to the terms of the written plea agreement executed prior to the Brinkley trial.  In addition, the government argues that its failure to move to dismiss Count 17 does not constitute a breach of the

---

[1] Nowhere does Teklu contend the government breached the plea agreement solely by failing to move to dismiss Count 17.

4

written plea agreement because the court did not impose a sentence on this count.[2]  In other words, Teklu received the benefit of the plea agreement.

IV.

Arguably, the government breached the terms of the written plea agreement by failing to move to dismiss Count 17 at Teklu's sentencing, but this does not constitute plain error because it did not affect the outcome of the proceedings.

Even if the government's misstatement at the Brinkley trial could be interpreted as a promise to drop two gun charges, Teklu could not reasonably have understood this purported oral promise to be part of his plea agreement because it did not conform to the integration clause in the written plea agreement (i.e., it was not embodied in a writing signed by both parties).  Thus, the government could not have breached the plea agreement by failing to drop two gun charges.  *See United States v. Ramos*, 971 F. Supp. 199, 208-09 (E.D. Pa. 1997) (concluding that a written plea agreement's integration clause precluded a theory of breach based on a broken oral promise); *see also* Restatement (Second) of Contracts § 213 cmt. c (1981) ("Where the parties have adopted a writing as a complete and exclusive statement of the terms of the agreement, even consistent additional terms are superseded.").

The government acknowledges that Teklu cooperated in the prosecution of his coconspirators.  It does not explain why it failed to move to dismiss Count 17 at sentencing.  *See Santobello*, 404 U.S. at 262 (stating that when a prosecutor makes a

---

[2] The government does not explain why it failed to move to dismiss Count 17 at Teklu's sentencing.

5

promise in a plea agreement, he must keep it); *United States v. Miller*, 565 F.2d 1273, 1274 (3d Cir. 1977) ("[T]he Government must adhere strictly to the terms of the bargains it strikes with defendants."). Nevertheless, this apparent breach does not constitute plain error because it did not "affect[] the outcome of the district court proceedings" since no sentence was imposed on Count 17. *Puckett*, 556 U.S. at 135 (citation omitted) (internal quotation marks omitted). Consequently, there is no need to consider whether the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation omitted) (internal quotation marks omitted).

V.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.