NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1061
_____

UNITED STATES OF AMERICA

v.

JEAN E. DESROSIERS,
                              Appellant
_____

On Appeal from United States District Court
for the District of New Jersey
(D. NJ. No. 3-13-cr-00424-001)
District Judge:  Joel A. Pisano
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 11, 2014

FISHER and SCIRICA, *Circuit Judges*, and MARIANI,[*] *District Judge*.

(Filed:  June 10, 2014)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Defendant-Appellant Jean Desrosiers appeals the eighteen-month sentence

imposed by the U.S. District Court for the District of New Jersey.  We find that the

_____
[*]The Honorable Robert D. Mariani, District Judge for the United States District
Court for the Middle District of Pennsylvania, sitting by designation.

District Court plainly erred in imposing that sentence and will therefore vacate the District Court's judgment and remand for resentencing.

I.

We write principally for the parties, who are familiar with the factual context and legal history of the case. Therefore, we will set forth only those facts necessary to our analysis.

Desrosiers was charged in a five-count Information with knowingly and willfully aiding and assisting in the preparation and presentation of false tax returns, in violation of 26 U.S.C. § 7206(2). As owner of Jean Multiple Services, Desrosiers prepared federal tax returns for his clients. During the tax years 2007, 2008, 2009, 2010, and 2011, Desrosiers prepared more than 2,300 individual federal income tax returns. Approximately seventy-nine of those returns contained fabricated and inflated deductions and credits, which resulted in a tax loss to the federal government of approximately $168,424. The counts of conviction identify five of those seventy-nine instances of fraudulent returns. The Presentence Investigation Report ("PIR") reveals that Desrosiers at times prepared two returns for clients, one that the client approved and one that was actually filed, with the latter containing even greater deductions and credits. This allowed Desrosiers to retain some of the fraudulently-obtained refunds for himself.

Desrosiers entered a guilty plea pursuant to an agreement with the government, in which the parties stipulated to, *inter alia*, a tax loss that was more than $80,000 but less than $200,000. At the sentencing hearing, the parties agreed to an offense level of 15 and

2

a criminal history category of I, with a resulting advisory Guidelines range of 18-24 months' imprisonment. The District Court rejected Desrosiers's motion for a downward departure pursuant to U.S.S.G. § 5H1.4 based upon his physical condition, as he suffered from prostate cancer and a frozen shoulder. The District Court also heard argument relative to the sentencing factors set forth in 18 U.S.C. § 3553(a). In addition to the health issues, Desrosiers's counsel highlighted his age, his work as a nurse, his support of three daughters, and the relatively modest amount of loss in support of a downward variance to a non-custodial sentence.

During the proceedings, the District Court commented that "[t]he [PIR] tells me he prepared something like 2300 fraudulent tax returns." App. at 80. Desrosiers's counsel responded: "Well, that's in the bush, Judge. There was like 16 people that sort of said, there was about 16 witnesses that [the government] had that were prepared to parade through, despite signing their tax return." App. at 80. Subsequently, while imposing the sentence, the Court reiterated:

> What we have here is a systematic tax fraud. The defendant stipulates that he was in the business of tax preparation and we have a substantial, long-running tax fraud *in which the defendant prepared, according to the presentence report, over 2000 fraudulent tax returns . . . .* To summarize, I find that *a custodial term is necessitated by the facts of the case and the extent in terms of the duration of the criminal conduct.*

App. at 85-86 (emphasis added). Desrosiers was sentenced to 18 months' imprisonment on each count to be followed by a term of one year of supervised release on each count, all sentences to run concurrently. This appeal timely followed.

II.

3

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291. "The abuse-of-discretion standard applies to both our procedural and substantive reasonableness inquiries" with respect to sentencing appeals. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Where, however, an appellant did not object to an error occurring before the district court,[1] this Court exercises discretionary plain error review. Fed. R. Crim. P. 52(b); *Puckett v. United States*, 556 U.S. 129, 134-35 (2009). Under the plain error standard, "there must be an error that is plain and that affects substantial rights." *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006) (internal quotation marks and alterations omitted). The Supreme Court has outlined a four-prong test for when we can remedy such error: first, the error must constitute a "'[d]eviation from a legal rule;'" second, it must be "'clear or obvious, rather than subject to reasonable dispute;'" third, it must affect the appellant's "'substantial rights;'" and fourth, it must seriously affect "'the fairness, integrity or public reputation of judicial

---

[1] Desrosiers makes only passing reference to his efforts to object to the District Court's misstatement of facts in the PIR. *See* Appellant's Br. at 19-20 ("The district court at least abused its discretion by relying so heavily on information in the [PIR] in light of the objections noted by defendant's counsel to the amount of fraudulent tax returns actually prepared by defendant."). Upon review of the record, we can find no such objection. "[A] party may preserve a claim of error by informing the court . . . [of] the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b). When the Court asked counsel if Desrosiers had prepared over 2000 fraudulent returns, counsel did not correct the misstatement of fact, nor did he object to that number. Instead, counsel simply emphasized that he was "not arguing with your Honor," and pointed out the number of witnesses the government had and the relatively small amount of loss at issue. App. at 80. This was not sufficient to preserve the claim of error under Rule 51.

4

proceedings.'" *United States v. Dahmen*, 675 F.3d 244, 248 (3d Cir. 2012) (internal quotation marks omitted) (quoting *Puckett*, 556 U.S. at 135). An error affects substantial rights generally where it "'affected the outcome of the district court proceedings.'" *Puckett*, 556 U.S. at 135 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

III.

Desrosiers argues that we should find both procedural and substantive error. When reviewing a sentence for procedural reasonableness, we must "ensure that the district court committed no significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts." *Gall*, 552 U.S. at 51. Despite the highly deferential plain error standard in this case, we conclude that the District Court committed procedural error by selecting a sentence based upon the erroneous factual finding that Desrosiers prepared "over 2000 fraudulent tax returns."

With respect to the first and second prongs of the *Puckett* test, the District Court's statements at sentencing demonstrate the weight it placed on the mistaken number of fraudulent returns. This reliance is a clear deviation from the well-established rule set forth in *Gall* prohibiting the selection of a sentence based upon clearly erroneous facts. *Id.* The government concedes that the District Court's finding about the number of fraudulent returns was made in error. *See* Appellee's Br. at 19 ("While the Court's attribution of this information to the [PIR] was incorrect . . . ."). The District Court referred to that number on two occasions during sentencing. Importantly, the District Court also stated that a custodial term of imprisonment "[was] necessitated by the *facts* of

5

the case and the *extent* in terms of the *duration* of the criminal conduct." App. at 86 (emphasis added). This reference to the facts and extent of the criminal activity implicates the number of fraudulent returns because the Court had referred to the crime as "systemic" and a "long-running tax fraud in which the defendant prepared . . . over 2000 fraudulent tax returns." App. at 85. The District Court's statements clearly demonstrate that the erroneous facts influenced its selection of a custodial sentence. *Gall*, 552 U.S. at 51.

The government points to other statements by the District Court as evidence that the erroneous facts did not influence the sentencing decision. Specifically, the District Court noted that: "part of the conduct that disturbs me is that he filed one return or told his client that he was filing one tax return when he, in fact, prepared another one, thereby increasing the amount of tax credits and refund which he kept for himself." App. at 85. While the District Court did note this aspect of the crime, the fact remains that the District Court found that the "extent" and "duration" of the crime—represented by the "over 2000 fraudulent tax returns"—was what "necessitated" a custodial sentence. We therefore conclude that the first two prongs of the *Puckett* test are met in this case.

With respect to the third prong of the plain error test, we cannot conclude that the District Court would not have imposed a different sentence had the proper facts come to light. *Puckett*, 556 U.S. at 135. As noted above, the District Court found that a custodial sentence was necessary based upon the erroneous facts. Our conclusion is bolstered by the enormous discrepancy between the actual number of fraudulent returns (seventy-nine)

6

and the mistaken number (more than 2000). Had the District Court been aware that the fraudulent returns represented only 3% of the total number of returns Desrosiers prepared during the time period at issue, it likely would not have concluded that the criminal activity was as "extensive" as it did, and a different (perhaps non-custodial or below-guidelines) sentence likely would have resulted.

The government correctly points out that the number of fraudulent returns does not alter Desrosiers's advisory Guidelines range. We note, however, that the Guidelines range is but one aspect of the sentencing calculus—and an advisory one at that. *United States v. Booker*, 543 U.S. 220, 245 (2005). In exercising its sentencing discretion, the District Court must also consider the "nature and circumstances of the offense," and the "need for the sentence imposed . . . to reflect the seriousness of the offense." 18 U.S.C. § 3553(a). Both considerations require the sentencing court to be aware of the actual extent of the criminal activity. The District Court must consider the proper facts when exercising its discretion. That did not occur in this case and the outcome could very likely have been different.

With respect to the fourth prong, we find it appropriate to exercise our discretion under plain error review and remand for resentencing. *Puckett*, 556 U.S. at 135 (noting that this Court has discretion to correct plain error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings" (internal quotation marks and alterations omitted)). The Supreme Court has acknowledged that a sentence predicated on false information implicates due process concerns, *Townsend v. Burke*, 334 U.S. 736,

741 (1948), and is a "significant procedural error." *Gall*, 552 U.S. at 51; *see also United States v. Katzin*, 824 F.2d 234, 240 (3d Cir. 1987) ("[D]ue process may require resentencing when the information on which the sentencing court may have relied in a [PIR] is mistaken or unreliable." (citing *Moore v. United States*, 571 F.2d 179, 183-84 & n.7 (3d Cir. 1978))). A failure to acknowledge these important concerns would seriously undermine confidence in the judicial system. In this case, fairness dictates that the District Court consider the proper facts, as set forth in the PIR, before imposing its sentence.

The government's final argument is that there was no plain error because the District Court could have reasonably inferred from the government's sentencing memorandum that Desrosiers did, in fact, file more than 2000 fraudulent tax returns. In the memorandum, the government states that "the charged offenses *may be* only a fraction of the false and fraudulent returns filed by the Defendant." Supp. App. at 7 (emphasis added). This argument—based on an equivocal statement at best—is unavailing because it runs contrary to the District Court's statements at sentencing. We will not make an inference on the District Court's behalf in an effort to substantiate its reasoning—particularly where such an inference would be contrary to the record before us. On both occasions that the District Court referred to the number of fraudulent returns, it noted that it arrived at the conclusion based upon information in the PIR. Moreover, the government's sentencing memorandum does not indicate how many fraudulent tax returns Desrosiers filed, nor did the government object to the seventy-nine identified in

the PIR.  Indeed, Desrosiers admitted in his plea colloquy to only the number in the PIR. App. at 63-64.

Because we conclude that the District Court committed procedural error in imposing the sentence and will remand, we express no opinion on the merits of Desrosiers's remaining arguments.  On remand, the District Court should impose its sentence pursuant to the three-step paradigm outlined in *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006).

IV.

For the foregoing reasons we will vacate the District Court's judgment of sentence and remand for resentencing.