NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 11-2812 & 12-1328

_____


UNITED STATES OF AMERICA

v.

GENNARO RAUSO,
Appellant


_____


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-10-cr-00406-001)
District Judge: Honorable Michael M. Baylson

_____


Submitted Under Third Circuit LAR 34.1(a)
November 19, 2013


Before:  AMBRO, and SMITH, Circuit Judges
and O'CONNOR,* Associate Justice (Ret.)

(Opinion filed: December 12, 2013 )

_____

OPINION

_____


AMBRO, Circuit Judge

_____

* Honorable Sandra Day O'Connor, Associate Justice (Ret.) for the Supreme Court of the
United States, sitting by designation.

Gennaro Rauso pled guilty to 17 counts of financial crimes that included violations of: 12 U.S.C. § 1709-2 (equity skimming); 18 U.S.C. §§ 1341 (mail fraud), 1029 (access device fraud), and 1344 (bank fraud); and 26 U.S.C. § 7206 (tax fraud). His sentence was 160 months' imprisonment, which he now appeals.[1] We affirm.

## I. Background[2]

Rauso entered a plea agreement in 2010 for his involvement in multiple fraud schemes that included credit card, bank, tax, and mortgage fraud. In the agreement the parties stipulated to certain facts related to Rauso's Guidelines calculation. They agreed that: (1) the loss amount for the offenses exceeded $400,000, resulting in a 14-level increase in the offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(H); and (2) the offenses involved more than 50 victims, resulting in a 4-level increase pursuant to § 2B1.1(b)(2)(B). App. at a39. The Government also promised that at the time of sentencing it would:

> [c]omment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence related to the dismissed counts, if any, and to the character and any criminal conduct of the defendant; address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing.

---

[1] Rauso filed a *pro se* brief in this appeal before Rauso's current counsel, Mr. Brian J. Zeiger, Esq., was appointed. We do not consider separately the arguments raised in Rauso's *pro se* brief because he is now represented by counsel. *See United States v. Turner*, 677 F.3d 570, 579 (3d Cir. 2012).

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. Our jurisdiction is pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

2

*Id.* at a37.  Finally, Rauso agreed to "waive[] all rights to appeal or collaterally attack

[his] conviction, sentencing, or any other matter relating to [his] prosecution[,]" subject

to certain exceptions not relevant to this appeal.  *Id.* at a40.

In its Presentence Investigation Report ("PSI") the Probation Office recommended

that an additional 2-level enhancement be applied to Rauso's Guidelines calculation

under U.S.S.G. § 2B1.1(b)(10)(C)(i)[3] because his conduct involved identity theft.  PSI

¶ 86.  At sentencing Rauso objected to the enhancement, and the Government agreed that

it should not apply.[4]  However, the District Court overruled Rauso's objection and found

that the enhancement was appropriate.  It thus calculated Rauso's Guidelines range as

130 to 162 months' imprisonment, and sentenced Rauso to 160 months.  He now appeals.

## II. Discussion

Rauso raises essentially two issues on appeal.  First, he argues that the

enhancements for loss amount and number of victims were based on inaccurate

information that the Government failed to correct at sentencing.  Second, Rauso contends

that the District Court erred when it imposed the enhancement for identity theft over his

objection.  Because the Plea Agreement contained an appellate waiver, Rauso must first

---

[3] In the 2013 version of the Sentencing Guidelines, this provision was relocated to
§ 2B1.1(b)(11)(C)(i).

[4] The dispute regarding the enhancement was whether Rauso's use of inmates' identities,
with their permission, to open credit cards in their names constituted the "*unauthorized
. . . use of any means of identification unlawfully to produce or obtain any other means of
identification*[.]" U.S.S.G. § 2B1.1(b)(10)(C)(i) (2010) (emphasis added).

3

persuade us that his waiver should not be enforced.[5]  Because he fails to do so, we need

not reach the merits of his arguments on appeal.

A defendant's appellate waiver is not enforceable if the Government breaches its

own obligations under a plea agreement.  *See United States v. Moscahlaidis*, 868 F.2d

1357, 1360 (3d Cir.1989).  Rauso argues that such a breach happened here.  Because he

did not raise this argument before the District Court, we review the question of whether

the Government breached the plea agreement for plain error.  *Puckett v. United States*,

556 U.S. 129, 131-34 (2009); *United States v. Dahmen*, 675 F.3d 244, 247-48 (3d Cir.

2012).  We may remedy such an error only where it: (1) constitutes a "[d]eviation from a

legal rule"; (2) is "clear and obvious, rather than subject to reasonable dispute"; (3)

"affect[s] the appellant's substantial rights"; and (4) "seriously affect[s] the fairness,

integrity or public reputation of judicial proceedings."  *Puckett*, 556 U.S. at 135 (internal

quotations and citations omitted).

We are mindful of the Government's "tremendous bargaining power" and "strictly

construe the text [of the plea agreement] against [it]."  *United States v. Baird*, 218 F.3d

221, 229 (3d Cir. 2000).  We have also recognized the "widely agreed-upon notion that

plea agreements must be construed according to the general principles of contract law."

*McKeever v. Warden SCI–Graterford*, 486 F.3d 81, 95-96 (3d Cir. 2007) (citing *United

States v. Gebbie*, 294 F.3d 540, 551 (3d Cir. 2002)).  These principles include that "[a]

---

[5] He does not contend that the appellate waiver was unknowing or involuntary or that his arguments on appeal fall under one of the exceptions to the waiver noted in the plea agreement.  *See United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008).

4

writing must be interpreted as a whole and no part should be ignored." *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008) (internal quotation and citation omitted).

Rauso argues that the Government breached its obligation to "bring to the Court's attention all facts relevant to sentencing[,] . . . respond factually to questions raised by the Court[, and] correct factual inaccuracies in the presentence report or sentencing record." Appellant's Br. at 3 (citing App. at a37). Specifically, he contends that the Government should have informed the Court at sentencing about errors concerning the loss amount and number of victims contained in the PSI and in testimony by a probation officer.

Rauso takes the language of the plea agreement out of context. Elsewhere in the agreement he stipulated to precisely the facts he contends the Government failed to correct at sentencing. Based on these stipulations, Rauso may not object to the enhancements for loss amount and number of victims or challenge the facts on which they were based, *United States v. Mastrangelo*, 172 F.3d 288, 294 (3d Cir. 1999), and the Government was similarly justified in relying on the stipulations rather than presenting its own evidence supporting the facts underlying them. Read in conjunction with the parties' stipulations, the provision of the plea agreement that Rauso cites did not require the Government to "fact-check" the PSI or testimony by the probation officer, particularly because Rauso has not shown that the Government knew of any errors in the PSI at the time of sentencing.

Rauso's arguments are based primarily on the Government and the Probation Office revising certain of their calculations as to the loss amount and number of victims in preparation for the restitution hearing in this case. As the Government points out, the

calculations presented at that hearing, as opposed to those presented at sentencing, were specifically used to determine the restitution amount, not the facts supporting Rauso's Guidelines calculation. Appellee's Br. at 38-39. The Government apparently took an "exceedingly conservative" approach to determining the restitution amount. *Id.* at 39. Accepting Rauso's argument in this appeal would actually disadvantage criminal defendants by discouraging the Government from taking such an approach in the future for fear that a defendant would use the Government's concessions at the restitution phase to renege on an appellate waiver. Requiring the Government to fact-check the evidence presented by the Probation Office as to the loss amount and number of victims in this case would effectively read the parties' stipulations out of the agreement.

We thus reject Rauso's argument that the Government breached the agreement, and hold that the appellate waiver is enforceable. Because the arguments Rauso raises on appeal are all covered by the waiver, they are precluded and we need not analyze the merits of his claims. Hence we affirm.